UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
JOZEF FILIP,

                                Plaintiffs,

        -against-

WELLS FARGO BANK, N.A., FANNIE MA
CERTIFICATES FANNIE MAE REMIC
TRUST 2007-30, and JOHN DOES 1 THROUGH 10,

                                Defendants.
-----------------------------------------------------------------------x

Case No.:

**VERIFIED**
**COMPLAINT**

Jury Trial Requested

PLEASE TAKE NOTICE that the Plaintiffs herein by Kenneth S. Pelsinger, Esq., an attorney duly admitted to practice before the United States District Court, Southern District of New York, as and for their Complaint against Defendants respectfully allege as follows:

## BACKGROUND

1. This action for declaratory and injunctive relief and other relief is brought by (hereinafter referred to as the "modification" or "agreement"), and secured by the Plaintiff's home known as and located at 730 Lindegar Street Linden, NJ 07036-5754 (hereinafter referred to as the "property", "premises" or "subject premises") related to a mortgage loan modification agreement. Plaintiff is seeking rescission of the loan modification agreement entered into between Plaintiff to Defendant, WELLS FARGO BANK, N.A. (hereinafter referred to as "WELLS FARGO") in the amount of $398,859.72, on or about September 25, 2012, on the grounds WELLS FARGO was not the owner and holder in due course of the Plaintiff's mortgage and note at the time the loan modification agreement was entered into because the original mortgage and corresponding mortgage note were separated and placed in a securitized trust, Defendant, FANNIE MAE GUARANTEED REMIC PASS-THROUGH CERTIFICATES FANNIE MAE REMIC TRUST 2007-30 (hereinafter referred to as the "Trust" or "FANNIE MAE"). The underlying mortgage

was transferred into a mortgage pool and the note was split, securitized and sold as stock or stock equivalent to investors. The action also seeks damages against Defendants for fraud, Qui Tam securities law violations and other causes of action.

## PARTIES, JURISDICTION AND VENUE

2.     At all relevant times, Plaintiff is a home owner and consumer residing at the subject premises in the County of Union, State of New Jersey.

3.     At all relevant times, Plaintiff is and remains the titled owner of the subject premises. Plaintiff is an immigrant to the United States whose first language is Polish not English.

4.     At all relevant times, Defendant-WELLS FARGO, was and remains a national banking association organized under the laws of the United States of America authorized to do business in the State of New Jersey with its principal place of business located in Des Moines, Iowa.

5.     At all relevant times, Defendant-Trust is a securitized trust, created by New York Trust law and are governed by New York law. [1]

---

[1] New York trust law requires strict compliance with the trust documents; any transaction by the trust that is in contravention of the trust documents is void and cannot take place by operation of law. Securitized trusts sell Mortgage-Backed Securities with special tax status and requirements because each is a Real Estate Mortgage Investment Conduits ("REMIC"). REMICs were created in 1986 to avoid "double taxation:" the securities were previously taxable at both the investor and the entity level. REMICs are not taxable at the entity level. A REMIC is a pass-through entity for tax purposes; REMICS do not pay income tax. A REMIC must acquire its mortgages within 90 days of its inception. 26 U.S.C. § 860G(a)(3), (9). To obtain REMIC classification, a trust must satisfy specific requirements. Within three months following start-up substantially all the trust's assets must be qualified mortgages. I.R.C. § 860(D)(a)(4). A "qualified mortgage" is an obligation that is principally secured by an interest in real property. I.R.C. § 860G(a)(3)(A). The trust must acquire the obligation by contribution on the startup date or by purchase within three months of the startup date. I.R.C. V 860(G)(a)(3)(A)(i), (ii). Consequently, to be a qualified mortgage, an asset must satisfy both a definitional requirement that it be principally secured by an interest in real property and a time constraint that it be acquired within three months after startup, which did not occur in this case. A securitization trust with REMIC Status normally allows for favorable tax treatment under the U.S. Tax code.

6.      That the true names of Defendants, JOHN DOES 1 THROUGH 10 (hereinafter referred to as "JOHN DOES"), inclusive, are unknown to Plaintiffs at this time. Plaintiffs sue those Defendants by such fictitious names. Plaintiffs are informed and believes, and based on that information and belief alleges, that each of the Defendants designated as a JOHN DOES is legally responsible for the events and happenings referred to in this Complaint, and unlawfully caused the damages to Plaintiff alleged in this Complaint.

7.      This Court has personal jurisdiction over the Defendants pursuant to New York State C.P.L.R. §302.

8.      This declaratory action is proper in this Court pursuant, but not limited to, 28 U.S.C. §§ 1331, 1332, 1338, 2201 and 2202. This Court has supplemental jurisdiction over any related state law claims pursuant to 28 U.S.C. §1367. [2]

9.      Venue in this District arises for multiple reasons within the scope and meaning of 28 USC §1391(b). Qui Tam venue also arises for cause because of the continuation of the violations of the Federal securities laws and may the court's jurisdiction in nature of a Qui Tam relation with the court authorized to issue injunctions pursuant but not limited to, Title 15 U.S.C. 53(b) and under New York law GBS § 349. The request for issuance of the preliminary and permanent injunctions against Defendants are appropriately issued by this court enjoining them from continuing to engage in the accounting and other financial fraud practiced under color of authority.

---

[2] Ancillary jurisdiction arises because there is probable cause for this court's exercise of Qui Tam jurisdiction under but not limited to Sections 2l(d), 2l(e) and 27 of the Exchange Act [15 U.S.C. 78u(d), 78u(e) and 78aa]; and/or 26 IRC 860G *et seq.*

## GENERAL AND FACTUAL ALLEGATIONS

10. That on or about January 16, 2007, Plaintiff and his wife executed and delivered a mortgage in the amount of $396,000.00 to WELLS FARGO secured by the subject premises, and corresponding mortgage note in the same amount.

11. That on or about September 25, 2012, Plaintiff and WELLS FARGO entered into the loan modification agreement in the amount of $398, 859.72.

12. That at the rime the parties entered into the modification, WELLS FARGO did not lawfully or rightfully own or hold the note or mortgage or any title interest in the Plaintiff's property.

13. Plaintiffs asserts that WELLS FARGO BANK, N.A. has violated and will continue to violate New York and Federal laws and has engaged in deceptive business practices. Upon information and belief Plaintiff asserts that Defendant has violated Federal securities laws.

14. Upon information and belief, Plaintiff asserts that WELLS FARGO advertised in New York, New Jersey and elsewhere, that it owned and held the note and mortgage at the time the loan modification was entered into when in fact there was no evidence whatsoever that it owned and hold the mortgage and original "wet inked" promissory note at that time.

14. That the corresponding mortgage note was sold to, transferred and acquired by FANNIE MAE from WELLS FARGO on or about February 1, 2007.

15. That the mortgage was never transferred by WELLS FARGO but the note in the amount of $396,000 was pooled, sold and transferred with other loans and mortgages pursuant to a security offering of $3,079,141,002.00 made by the Trust with an issue date of March 30, 2007.

16. That FANNIE MAE sold the note as a security, stock or stock equivalent to investors, while WELLS FARGO collected mortgage payments.

17. That the Trust claimed ownership of the mortgage loan at the time the modification agreement was entered into by the Plaintiff and WELLS FARGO.

18. That the Trust is governed by a pooling and servicing agreement (hereinafter referred to as the "PSA").

## As and for a First Cause of Action

19. All prior paragraphs are incorporated by reference.

20. Upon information and belief Plaintiff asserts that FANNIE MAE advertised in New York, and elsewhere, that the Trust owned and held the note and mortgage secured by the subject premises pursuant to an assignment of mortgage when in fact there is no evidence whatsoever that it owns and hold the mortgage and original "wet inked" promissory note and that Defendants have been making materially misleading statements in the foreclosure action and before federal regulatory bodies about and ownership of the mortgage and note.

21. That is, the ownership representations are impeached or discredited by the fact that the Plaintiff's property was not acquired pursuant to the assignment of mortgage which is now causing Plaintiff damages and injuries by way of the deceptive and misleading advertisements and claims about the Trust's lawful ownership made in public, made to the United States and made against her in debt collection proceedings.

22. Upon information and belief Plaintiff asserts that the Trust has failed to comply with Generally Accepted Accounting Principles (GAAP) and FAS 140 in that it purports to have purchased or a sale was done and title or transfer was made or that it accepted a deposit of a mortgage and note.

23. The Trust also know or should reasonably know that there was in fact no such valid or true sale being another reason the transaction is void on its face and was reasonably known to have been void when the claims were made.

24. Beginning in January 2007, and continuing to the present time in New York, and elsewhere, the Trust is asserting it has or had a title interests it does not have. In doing so it has advertised in New York that owned the same when it did not and has engaged in deceptive business practices.

25. Both WELLS FARGO and the Trust purports that it hold or own Plaintiff's note and mortgage. This claim is believed to involve federal securities. Federal securities laws are believed to exclusive to federal jurisdiction and may operate to preempt state regulatory laws.

26. The assertion of ownership is believed to be derivative of or is based upon the fictional assignment of mortgage.

27. The Trust and its sponsor, depositor and trustee are evading federal law and legal requirements and is believed to have filed false statements or reports with the United States.

28. Defendants are acting as a debt collector.

29. This debt collection is being undertaken under color of state law or authority. This debt collection is believed to have been initiated upon or by and through the use of Defendants' deceptive or misleading practices.

30. The Trust has and continues to falsely represent that the mortgage and note were lawfully transferred or timely delivered or transferred to the Trust in 2007. Unless enjoined FANNIE MAE will proceed to execute said sale in direct contravention of the New York and New Jersey laws, and other violations of state and federal laws.

31. By virtue of the foregoing and the facts Plaintiff has shown or established probable cause sufficient to support a finding that Defendants have materially failed in its compliance measures with GAAP, FAS 140, true sale requirements and have engaged in other violations of Federal Securities laws sufficient to warrant a finding of probable cause for penalty assessments upon which Plaintiff would receive an award pending or upon such assessments as authorized under, but not limited to, provisions of Dodd Frank Wall Street Reform acts in nature of a probable cause finding under but not limited to, 17 CFR § 240.10b5.

## As and for a Second Cause of Action

32. All prior paragraphs are incorporated by reference.

33. Defendants along with others to be discovered and named through the assignment and securities "washback" scheme, a scheme which was motivated by the desire of the Trust to appear as a Real Estate Mortgage Investment Conduit (hereinafter referred to as "REMIC") to avoid large year-end tax payments and/or to make it appear that there were "true sales" by and through the artifice and device of an assignment of mortgage they knew was false failed for a want of true consideration. Defendants knew the statements were misleading when the statements were made.

34. Defendants made and continue to make the statements in connection with the conduct described herein, Defendants, directly or indirectly, made statements and used the means or instrumentalities of interstate commerce, or the U. S. Mails and/or the facilities of a National exchange.

35. All Defendants would and did use void or counterfeit assignments that expose the reality that they are engaging in and structuring a conspiracy to violate tax laws of the United States, debt collection laws of New York and the United States, and to deceive and mislead the

Plaintiffs, the Public, credit default swap parties and others into believing that such an assignment could lawfully transfer an interest to the Trust or its Trustee well after the closing of the trust.

36. Defendants would then "book" these records or "valuations" to sustain or increase their stock prices when defendants know or should have known the 2012 assignment of the mortgage after the foreclosure action was commenced did not and does not meet general accounting requirements of FAS 140 or GAAP principals indicating there was a "true sale" for value as represented and/or in the alternative establishes the certificates were fraudulently issued.

37. These facts alone are suggested to be sufficient to warrant a finding of probable cause for issuance of an injunction and ordering of a referral to the SEC for administrative hearing requested by Plaintiffs on violations of, but not limited to Federal securities and REMIC fraud.

38. This scheme uses a state's general authority that has been preempted and in doing so violates state and federal laws where it habitually and routinely misrepresents the status and character of the debt where there is strict liability and no immunity for such material misrepresentations.

39. The practice is an abuse "racket" that somehow purports to allow the Defendants the right or power to adjudicate federal securities matter with fake or counterfeit and void assignments, held under a state general authority or the pretense of a debt collection or under color of a foreclosure jurisdiction on federal securities.  This is not the case and it is an abusive deception.  The "securities" or accrued rights as claimed to be "held" are not one in the same within the New York state jurisdiction over a power sale clause or the "foreclosure or debt collection jurisdiction to which defendants are not parties on the original instruments and are attempting to get there by the fake and false records and use of materially misleading and known

false statements regarding a conveyance styled as an assignment of the note and mortgage long after the closing of the Trust and not made by the identified depositor for the Trust.

40. Plaintiffs suggests the same is preempted for at least two primary reasons: There is no unification of the mortgage and note, and 2) the matter is a subject of a federal securities jurisdiction simply by the name or style of the caption implicating the specific preemptions of 15 USC §§ 77-r1.

41. This suggest cause for the finding that there is a deceptive practice and fraud being practiced by the Defendant, the Trust, and its affiliates who are doing so for the benefit of themselves and the Trust under color state law in the face if a securities jurisdiction preemption.

42. The Defendants' claim of a title interest or ownership by and through the hearsay and falsification of records purporting to make a transfer is based in fraud, misrepresentation and other misconduct.  It is one of the several overt acts in support of the conspiracy to avoid tax liabilities along with the self-evident federal preemption to float the proposition it has obtained a title through a robo-signed document then use and utter that and other documents in a judicial foreclosure as if that could or would obtain somehow provide them with a title interest through a foreclosure is to admit to the use of the state courts to launder money, conceal tax evasion, engage in false accounting and cover the REMIC and securities fraud.. All of this is being under taken under color of state law for purposes of civil rights violations, tax evasion, permitting and allowing the looting of the American tax payers, and Plaintiff to conceal the patent REMIC and securities fraud so Defendants can profit thereby and all of which is subject to issuance of a summary injunction.

43. By engaging in the conduct described in this Complaint, Defendants aided and abetted the violations of, but not limited to CFR Sections 24010(b) (5) by and through the section

defining deceptive and misleading practices done in connection with the sale promotion of securities that in fact are premised in fraud or otherwise don't exist as a result of the confession of the assignment years after the issuance of the certificates.

44. These individuals and entities have and continue to directly caused injuries in a securities fraud scheme. Plaintiffs charge them as aiders and abettors to the scheme.

45. Defendants know and have knowledge of a fraudulent assignment scheme. Furthermore, the transfer of the mortgage and note competent under any stretch of the REMIC and securities jurisdictions.

46. Defendants should be charged as persons who are assisting and otherwise are aiders and abettors to insider trading, securities fraud, tax evasion among other deceptive practices and schemes undertaken on behalf of their clients because their actions are part and parcel of the "proximate cause" of tax payer loses, and injuries to plaintiff and the use of his or her identities to profit themselves and even if it isn't there is a question to "proximate cause" still liability of the harm resulting from the fraudulent activity which allows the court or the Court to compel the SEC to issue the cease and desist order or for this court to issue the injunction to deter the present fraudulent behavior by the companies, their executives, affiliates and debt collection counsels and attorneys. These Defendants have knowingly, recklessly are providing substantial assistance to a primary violators of the securities laws.

47. All of this was done by Defendants in direct violation of Federal and New York law to pretend Defendants could collect on said debt, and obtain benefits and otherwise engage in numerous unlawful and tortuous, and obtain insurance or insurance type payouts and/or claim and accept TARP Act or other Federal monies to the harm an injury of Plaintiff's reputation, credit and standing in the community in addition to other damages and costs.

### As and for a Third Cause of Action

48. All prior paragraphs are incorporated by reference.

49. That on or about January 16, 2007, Plaintiff entered into a loan modification agreement with WELLS FARGO that increased the unpaid principal balance of the loan from $396,000.00 to $398,859.72, with an adjustable interest rate. That pursuant to said agreement Plaintiff agreed to make monthly mortgage payments in the amount of $2335.73 per month beginning October 1, 2012, until September 1, 2017.

50. That Plaintiff entered into the aforesaid agreement based on WELLS FARGO's representation that it was the owner and holder of the subject mortgage.

51. That WELLS FARGO is not the owner and holder of the subject mortgage and note because, among other reasons, the mortgage was assigned and the note transferred to the Trust prior to execution of the modification.

52. That as a result of the aforesaid, WELLS FARGO was not the owner and holder of the subject mortgage, and, therefore, did not have capacity to enter into the loan modification agreement with Plaintiff.

53. That Defendants represented to Plaintiff that WELLS FARGO was the current owner and holder of the subject mortgage and note.

54. Defendants' said representations were false to their knowledge and were made with a fraudulent intention of obtaining unwarranted monthly mortgage payments in the amount of $2335.73 and maintaining WELLS FARGO's purported ownership of the mortgage and note.

55. That Defendants intended to deceive Plaintiff and induce Plaintiff to enter into the aforesaid loan modification agreement with WELLS FARGO despite the fact WELLS FARGO did not legally own and hold the subject mortgage. In reasonable reliance of WELLS FARGO's skill and knowledge, Plaintiff entered into the loan modification agreement.

56. Pursuant to the terms of the loan modification agreement with WELLS FARGO, to date, Plaintiff paid Defendants approximately $84086.28.

57. That upon learning of the falsity of Defendants' representations, Plaintiff notified Defendants that he rescinded the loan modification agreement and demanded return of said monthly mortgage payments made to Defendants. Defendants refused and still refuse to return it.

58. That be reason of the foregoing, Plaintiff is entitled to (i) an award of compensatory and actual damages; (ii) order setting aside and cancelling the loan modification agreement as a matter of record; (iii) an order rescinding the loan modification agreement and declaring it null and void and declaring WELLS FARGO shall have no right to collect, receive or retain any principal, interest, or other charges whatsoever with respect to the loan modification agreement; (iv) an order enjoining Defendants from proceeding with an action for breach of the loan modification agreement; (v) an order awarding Plaintiff the return of any payments made to Defendant pursuant to the subject mortgage loan and note obligation; and (vi) an award of costs and reasonable attorney fees in an amount to be determined by this Honorable Court.

### As and for a Fourth Cause of Action

59. All prior paragraphs are incorporated by reference.

60. That by virtue of the foregoing, Defendants have been unjustly enriched in the amount of $84086.28.

61. That by virtue of the foregoing, Plaintiff sustained damages in the amount of $84086.28 plus interest, disbursements, costs and attorney fees.

## **RESERVATION OF RIGHTS**

62. Plaintiffs reserve their right to amend this Complaint and to raise and rely upon any additional claim or cause of action that they determine during the course of discovery is appropriate and applicable to the within action.

## **JURY DEMAND**

63. Plaintiffs demand a trial by jury on all issues so triable.

WHEREFORE, Plaintiff prays for:

(a) A declaration that Plaintiffs do not and did not owe Defendants any money or either directly or indirectly;

(b) A declaration that the loan modification agreement is null and void;

(c) A return of any payments made to Defendants pursuant to the subject loan modification agreement;

(d) A declaration that the mortgage and note are null and void;

(e) An order that Defendants and each of its officers, employees, agents, attorneys, and any persons in active concert or participation with them are restrained and enjoined from prosecuting or instituting any action against Plaintiffs in the Superior Court, Union County, New Jersey;

(f) An award of $84086.28 plus interest, disbursements, costs and attorney fees;

(g) A monetary award pursuant to Plaintiff's Qui Tam claims;

(h) An award to Plaintiff of his costs and attorneys' fees; and

(i) Such other relief as this Court or a jury may deem proper and just under the circumstances.

Dated: September 29, 2015         Kenneth S. Pelsinger, LLC

                         By:      _____
                                  Kenneth S. Pelsinger (kp 4039)
                                  Attorney for Plaintiffs
                                  3601 Hempstead Turnpike
                                  Suite 410
                                  Levittown, NY 11756
                                  (516) 784-5225

## **VERIFICATION**

I, JOZEF FILIP, affirm pursuant to penalties of perjury as follows to be true:

I am the Plaintiff in the within action; that I read the within Verified Complaint and know the contents thereof, and that same is true to my own knowledge, except and to matters herein stated to be alleged upon information and belief, and that as to those matters I believe them to be true.

*Jozef Filip*
_____
JOZEF FILIP